UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JENNIFER TAGHAVIDINANI,          )
                                 )
    Plaintiff,                   )
                                 )
v.                               )     1:16-cv-208-JDL
                                 )
RIVERVIEW PSYCHIATRIC            )
CENTER, et al.,                  )
                                 )
    Defendants                   )

**ORDER ON MOTION FOR
PROTECTIVE ORDER**

In this action, Plaintiff Jennifer Taghavidinani alleges that Defendants discriminated against her based on her disability and whistleblower status, and based on her participation in free speech activity. The matter is before the Court on Defendants' motion for protective order. (Motion, ECF No. 41.) Following a review of the record, and after consideration of the parties' arguments, the Court grants in part the motion.

**Background**

Plaintiff is a former employee of the Riverview Psychiatric Center ("Riverview"). Defendant Jay Harper is the acting Superintendent of Riverview.

In her complaint, Plaintiff alleges that another Riverview employee, "Director JC," reported a "pepper spray incident" and was subsequently fired. The incident occurred in December 2013. According to Plaintiff, Defendant Harper told others that Plaintiff would be "next." (Am. Compl. ¶ 39.)

On March 30, 2017, during a telephonic conference to address certain discovery issues, the Court considered the parties' arguments as to whether documents related to JC were relevant and discoverable. Following the conference, the Court ordered Defendants to produce the requested documents "subject to any non-relevance related objections Defendants believe are applicable." (Mar. 30, 2017 Report of Tel. Conf. and Order ¶ 2, ECF No. 34.) On April 6, 2017, the Court further directed Defendants to file a motion for protective order if they intended to withhold documents. (Apr. 6, 2017 Report of Tel. Conf. and Order ¶ 1, ECF No. 39.)[1] Through their motion for protective order, Defendants ask the Court to determine that they are not obligated to produce eight of the requested documents, citing the attorney-client and work product privileges, and 5 M.R.S. § 7070, which provides for the confidentiality of certain personnel records.

In support of the motion for protective order, Defendants submitted the Declaration of Deputy Attorney General Susan Herman (ECF No. 41-1). The declaration supports the following findings.

On or about October 9, 2014, the Office of the Attorney General (OAG) received a courtesy copy of a complaint to be filed by JC with the Maine Human Rights Commission (MHRC). In the complaint, JC asserted claims related to the termination of her employment at Riverview. (Herman Declaration ¶ 2.) Upon receipt of the complaint, the OAG and Riverview were on notice of JC's intent to commence an administrative

---

[1] JC, through her counsel, has not objected to the production of the documents. (ECF No. 39, ¶ 2.)

proceeding before the MHRC and reasonably anticipated that JC would initiate litigation against Riverview. (*Id.* ¶ 3.)

In October 2014, Deputy Attorney General Herman asked Laurel Shippee, the State Equal Employment Opportunity (EEO) Coordinator, to conduct a confidential investigation of the allegations contained in JC's complaint. (*Id.* ¶ 4.) Attorney Herman asked Ms. Shippee to investigate in order to acquire factual information, as well as Ms. Shippee's factual findings, conclusions and opinions, for Attorney Herman's use or use by another attorney in the OAG in connection with their effort to provide legal advice to Riverview and to Superintendent Harper regarding the proceedings before the MHRC and in any subsequent litigation. (*Id.* ¶ 5.) Attorney Herman also asked Ms. Shippee to provide an executive summary of her investigation, which Ms. Shippee did at the conclusion of her investigation. (*Id.* ¶ 6.) Attorney Herman reports that to the best of her knowledge, Ms. Shippee's executive summary and her investigative file have not been released to any third party, and they have been kept confidential. (*Id.* ¶ 7.)

The OAG represented Riverview in JC's proceeding before the MHRC. (*Id.* ¶ 8.) The proceeding terminated on February 3, 2017, after JC requested and received a right-to-sue letter from the MHRC. (*Id.* ¶ 9.)

## STANDARD OF REVIEW

1. **Attorney client privilege**

Federal Rule of Evidence 501 defines, in the first instance, the application and scope of the attorney-client privilege. The Rule provides:

> The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise:
>
> • the United States Constitution;
>
> • a federal statute; or
>
> • rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Fed. R. Evid. 501. As the Rule reflects, where state law applies to the claim or defense, the privilege would likely be governed by state law. In this action, although Plaintiff asserts claims under the Maine Human Rights Act, one of Plaintiff's principal claims is that Defendant violated her civil rights for which violation Plaintiff is entitled to relief under federal law. Because federal law governs one of the principal claims in this case, federal common law controls Plaintiff's assertion of the attorney-client privilege. *Marshall v. Spectrum Med. Grp.*, 198 F.R.D. 1, 2 (D. Me. 2000). *See also Swidler & Berlin v. United States*, 524 U.S. 399 (1998) (developing the federal common law attorney-client privilege in the context of a motion to quash a federal grand jury subpoena); *Cavallaro v. United States*, 284 F.3d 236, 245 (1st Cir. 2002) (same, motion to quash IRS summons); *Green v. Fulton*, 157 F.R.D. 136, 139 (D. Me. 1994); Fed. R. Evid. 501.

"The attorney–client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). It is designed to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and

administration of justice." *Id.* "By safeguarding communications between attorney and client, the privilege encourages disclosures that facilitate the client's compliance with law and better enable him to present legitimate arguments when litigation arises." *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 23 (1st Cir. 2011). However, "the privilege is not limitless, and courts must take care to apply it only to the extent necessary to achieve its underlying goals." *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003). A relatively narrow construction is appropriate because the privilege "comes with substantial costs and stands as an obstacle of sorts to the search for truth." *Id.*

The attorney–client privilege applies:

(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Cavallaro,* 284 F.3d at 245 (quoting 8 J.H. Wigmore, *Evidence* § 2292, at 554 (McNaughton rev. 1961)). As the party invoking the privilege, Defendant "must show both that it applies and that it has not been waived." *Lluberes,* 663 F.3d at 24.

**2.     Work product privilege**

"The attorney work-product privilege, codified in Fed. R. Civ. P. R. 26(b)(3), shields from disclosure materials prepared by attorneys 'in anticipation of litigation.'" *Autoridad de Carreteras y Transportacion v. Transcore Atl*., *Inc*., ___ F.R.D. ___, 2016 WL 7030972, at *10 (D.P.R. Dec. 2, 2016) (citing *Maine v. United States Dep't of Interior*, 298 F.3d 60, 66 (1st Cir. 2002)). In particular, the privilege protects "the mental

5

impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). However, the privilege also "limit[s] the circumstances in which attorneys may piggyback on the fact-finding investigation of their … counterparts." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010) (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)).

Under certain circumstances, "documents and tangible things" prepared in anticipation of litigation may be discovered if they are discoverable generally and if the party seeking production "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A).

The work product doctrine does not extend to "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for nonlitigation purposes," even if the materials were prepared by a lawyer and reflect "legal thinking." *United States v. Textron Inc. & Subsidiaries*, 577 F.3d 21, 30 (1st Cir. 2009) (quoting Fed. R. Civ. P. 26 advisory comm.'s note (1970)).

## DISCUSSION

Defendants seek a protective order regarding certain documents they have withheld from discovery. Specifically, Defendants have withheld from production five documents based on the attorney-client and work product privileges, and three documents based on 5 M.R.S. § 7070, which provides for the confidentiality of certain personnel records.

In opposition to the motion, Plaintiff cites Ms. Shippee's deposition testimony. (Plaintiff's Response at 1.) At her deposition, Ms. Shippee testified that as EEO

Coordinator for the State of Maine she serves as an EEO compliance officer, management consultant, and lead personnel investigator. (*Id.*, citing Shippee Dep. at 3 – 5, 15, 19.) In essence, Plaintiff contends that in her capacity as compliance officer, Ms. Shippee's job is to ensure the law is enforced and her work, therefore, is not as an advocate for either party. Plaintiff thus argues that Ms. Shippee's work is not privileged. Plaintiff also contends that none of the documents is a personnel record as contemplated by 5 M.R.S. § 7070.

1.  **Ms. Shippee's "Executive Summary" Memorandum**

    Defendants have withheld a document identified as Ms. Shippee's memorandum to Attorney Herman, in which memorandum Ms. Shippee provides a summary of her investigation into JC's complaint. Defendants assert the memorandum is work product. Plaintiff contends the investigation and memorandum are within Ms. Shippee's responsibilities as Maine's EEO Compliance Officer and, therefore, the document is not protected by the work product privilege.

    Given Ms. Shippee's various roles and responsibilities as the state's EEO Compliance Officer, Ms. Shippee could conceivably initiate an investigation such that her factual findings would be prepared "in the ordinary course," and not in anticipation of litigation. Here, the record lacks any evidence to suggest that Ms. Shippee commenced the investigation on her own. Instead, the record establishes the investigation was conducted at the request of the OAG, in anticipation of litigation. To obtain the memorandum, therefore, Plaintiff must demonstrate that she "has substantial need for the [memorandum] materials to prepare [her] case and cannot, without undue hardship, obtain [the] substantial

equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). Plaintiff has not made such a showing.

**2.     Ms. Shippee's Handwritten Notes**

Plaintiff seeks the notes of Ms. Shippee's interview with Defendant Harper. Because Ms. Shippee's investigation was commenced in anticipation of litigation, the work product privilege applies, and Plaintiff has failed to demonstrate that she "has substantial need for the [memorandum] materials to prepare [her] case and cannot, without undue hardship, obtain [the] substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A).

**3.     Letter from Defendant Harper to Attorney Herman**

Defendants have withheld a letter authored by Defendant Harper and addressed to Deputy Attorney General Herman. The December 11, 2014, letter discusses JC's allegations. Defendants assert the letter is protected by both the work product privilege and the attorney-client privilege. Plaintiff argues that the record does not reflect whether Defendant Harper was represented by the OAG at the time.

Given that the OAG was engaged in the defense of the Riverview agency when Defendant Harper authored the letter, that Defendant Harper was the superintendent of the agency at the time, and that the letter addressed allegations made by JC, I am satisfied that the communication was between a client (Defendant Harper as an executive of Riverview) and counsel, and was made in connection with the legal representation. The communication, therefore, is within the scope of the attorney-client privilege.

**4.     Email from Attorney Herman to Ms. Shippee Regarding the Investigation**

Defendants have withheld a December 3, 2014, email from Attorney Herman to Ms. Shippee after Attorney Herman requested that Ms. Shippee conduct an investigation. For the reasons stated above, the investigation and the documents prepared in connection with the investigation were prepared in anticipation of litigation and, therefore, are protected from discovery by the work product privilege.

**5.     Email from Commissioner Mayhew to Ms. Shippee**

Defendants have withheld a December 3, 2014, email authored by Department of Health and Human Services Commissioner Mary Mayhew, by which email she forwarded another email to Ms. Shippee. Defendants have produced the forwarded email, but not the email authored by Commissioner Mayhew. Plaintiff argues the email is a public record and not a privileged document. According to Defendants, Commissioner Mayhew is within the client control group and, therefore, her communication with the OAG's agent, Ms. Shippee, is both an attorney-client communication and work product. Given that Ms. Shippee's investigation constitutes work product, and given that the Commissioner is within the client control group, the email is also within the work product privilege.

**6 – 8.  Human Resources Records regarding pepper spray incident**

According to Defendants, WL is a former Riverview employee, whom the Department of Health and Human Services human resources staff interviewed in connection with the report of inappropriate use of pepper spray. [2] Human Resources staff

---

[2] The record does not reflect that WL applied the pepper spray. Evidently WL was a nurse at the facility and it was a "corrections" officer who applied the pepper spray. However, according to Plaintiff, the Department terminated WL's employment following its investigation of the incident.

also interviewed a contract employee in connection with the incident. Defendants have withheld the report and interviews citing the confidentiality of the documents under 5 M.R.S. § 7070. Additionally, Defendants have withheld correspondence between WL and the Department regarding the termination of his employment, and also withheld notes generated during grievance proceedings.

Pursuant to § 7070, "[r]ecords of the Bureau of Human Resources shall be public records and open to inspection of the public during regular office hours at reasonable times and in accordance with the procedure as the director may provide." However, certain records "shall be confidential and not open to public inspection," including "personal information" concerning employees. *Id.* § 7070(2). By designating the records confidential, the statute effectively excludes the records from the definition of "public record" in the Maine Freedom of Access statute. 1 M.R.S. §§ 402(3), 408-A.

According to Defendants, Ms. Shippee obtained the documents in the course of her investigation into the JC matter, evidently because JC alleged that the termination of her employment was the result of her report of the pepper spray incident. The documents are now among the documents contained in the investigation file.

While the records might not qualify as public records due to their confidential status under Maine law, and thus might not be available to the public for inspection, the records are not necessarily protected from discovery in federal court litigation. Indeed, the records evidently are potentially discoverable in state court litigation. *See In re Hampers*, 651 F.2d 19, 22 (1st Cir. 1981) ("The first [inquiry] is whether the courts of [the state] would recognize such a privilege."); *Pinkham v. Dep't of Transp.*, 2016 ME 74, ¶ 12, 139 A.3d

904, 909 ("Whereas FOAA governs the disclosure of non-confidential public information, discovery regards the disclosure of information—which may be confidential—within the closed universe of litigation."). Because Defendants have not established the documents are otherwise privileged, Defendants are not entitled to a protective order on the basis of the confidentiality of the documents.

Defendants also argue the documents are not relevant. The Court previously concluded that documents related to Ms. Shippee's investigation of the JC complaint are relevant to Plaintiff's claims in this action. The Court has not had the opportunity to assess whether the documents regarding WL are relevant. The Court, therefore, will direct Defendants to forward the documents to the Court for an in camera inspection.

## CONCLUSION

Defendants' request for protection is granted in part. Defendants are not required to produce the documents discussed in items 1 through 5 above. Within seven days of the date of this Order, Defendants shall provide the court with the documents discussed in items 6 – 8 herein. The Court will review the documents in camera and determine whether Defendants must produce the documents in discovery.

## NOTICE

Any objections to this order shall be filed in accordance with Fed. R. Civ. P. 72.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 3rd the day of August, 2017.